Bradley J Williams, Esq. (I.S.B. #4019)
David A. Eisele, Esq. (I.S.B. #9277)
WRIGHT LAW OFFICES, PLLC
Attorneys at Law
477 Shoup Avenue, Suite 109
P. O. Box 50578
Idaho Falls, ID 83405
Email:  brad@wrightlawidaho.com
        dave@wrightlawidaho.com
        icourt@wrightlawidaho.com
Telephone: (208) 523-4433
Facsimile: (208) 523-4400

Attorneys for Defendant
Golden Valley Natural, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ALEXIS JOHNSON, | ) | Case No. 4:19-CV-00105-BLW |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **GOLDEN VALLEY NATURAL,** |
| vs. | ) | **LLC'S MOTION IN LIMINE** |
| | ) | |
| GOLDEN VALLEY NATURAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW Defendant, Golden Valley Natural, LLC ("GVN"), by and through its

counsel of record, and submits this *Memorandum in Support of Golden Valley Natural, LLC's*

*Motion in Limine*.

### INTRODUCTION

Plaintiff Alexis Johnson has two basic claims: first, that she was a victim of sexual

harassment and gender discrimination, which created a hostile working environment that lead to

her "constructive discharge," and second, that she was a victim of disparate treatment based upon

her race/gender which, alternatively, compelled her to terminate her employment with GVN.

Under the Court's pre-trial *Order*, both parties have been allotted 10.5 hours to present their respective cases, which should be more than enough time since, with one exception, Johnson did not disclose in her *Initial Disclosures* or discovery responses any witnesses with personal knowledge who could corroborate **her** claims; instead, the majority of the testimony that Johnson seeks to introduce at trial is based upon "***other acts***" involving other former, disgruntled GVN employees' allegations of discrimination or harassment. As shown more fully below, such testimony has no relevance to Johnson's claim that she was a victim of gender/race discrimination, and consequently, it should be excluded.

Furthermore, Johnson's *Declaration* and *Statement of Facts*, filed in opposition to GVN's *Motion for Summary Judgment*, are replete with conclusory allegations and speculation about what other GVN employees said or did to other co-workers. Johnson seeks to introduce this type of evidence ostensibly to establish that GVN had a "pattern" of discrimination in violation of Title VII, but neither her *Complaint* or her *Charge of Discrimination* alleged a "pattern" or "practice," and Johnson has no statistical evidence to support such a claim.

Moreover, the "other employee" is not relevant to Johnson's specific claims against GVN. Additionally, the records of other employees are inadmissible, and evidence thereof should be excluded under Federal Rules of Evidence 401, 403, 404(b), and 802: First, as "comparator" evidence, the stories of other employees are not admissible because they are not similarly situated to Johnson in **all**, nor even any, **material** respects. Second, Johnson's offered "other acts," or "me, too" evidence, is inadmissible as past-evidence of discrimination.

Next, Johnson failed to provide information concerning her witnesses' anticipated testimony (e.g., Johnson's "family members," Justin Ruiz, Pamela Cortez, "Supervisor Andrew," and "Line Supervisor Julio"), which were required to be disclosed in Johnson's *Initial*

*Disclosures* and/or discovery responses. Because Johnson has never provided this information, testimony and/or records regarding those witnesses should be excluded.

Johnson similarly failed to provide GVN with certain information and medical records pertaining to one of her proposed damage expert witnesses (an unknown counselor at Creekside Counseling) in her *Initial Disclosures* and discovery responses. As a consequence, Johnson's counselor should be prohibited from testifying in this matter.

Johnson also alleges that she suffered "emotional distress" as a result of discrimination/harassment at GVN and as a consequence, sought medical treatment initially from Creekside Counseling, and later from Dr. Pamela Jensen, Johnson's OB-GYN. Specifically, Johnson alleges that she was prescribed anti-depressants by Dr. Jensen sometime after her son was born, which was about eight or nine months after Johnson quit working for GVN. However, Johnson never produced any medical records from her counselor at Creekside or Dr. Jensen in her *Initial Disclosures* or discovery responses. Likewise, Johnson has never disclosed Dr. Jensen as an expert witness in her *Initial Disclosures* or discovery responses. Consequently, any testimony or reference to Johnson's alleged medical treatment should be excluded.

Finally, Johnson's *Declaration* and deposition are replete with inadmissible testimony (e.g., speculation, conclusory assertions, and hearsay).

## ARGUMENT

I. **Johnson's Purported "Comparator" Employee Evidence Is Irrelevant to Her Discrimination Claims, Because Those Other Employees Are Not Similarly Situated in All Material Respects to Johnson.**

Rule 401, Federal Rules of Evidence, defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 401.

Johnson can only introduce evidence of other employees if it is very closely-related to her precise circumstances and theory of the case. *Vasquez* v. *County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003); *Mendelsohn* v. *Sprint/United Management Co.*, 2010 WL 4540310 (10th Cir. 2010). Such a determination is an extremely fact-based and specific inquiry, dependent upon many factors. Unless the facts and circumstances concerning the "other employees" are sufficiently similar to Johnson's situation in all material respects, and there is also a nexus between the other employees' alleged discrimination and Johnson's case, then the evidence is irrelevant and inadmissible.

A similarly-situated employee is one who "engaged in conduct similar to that of [Johnson] and who is similar to [Johnson] 'in all material respects.'" *Baldyga* v. *City of New Britain*, 554 F.Supp.2d 268, 277 (D. Conn. 2008); *Beck* v. *UFCW, Local 99*, 506 F.3d 874, 885 (9th Cir. 2007). Furthermore,

> *[A] pattern or practice of discriminating against a particular protected group or characteristic does not consist of isolated or sporadic discriminatory acts by the employer.* [I]t must be established…that [the impermissible] discrimination was the company's…regular rather than the unusual practice. "*Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure*…" "[T]estimony from…employees who had *different supervisors than plaintiff*, who *worked in different parts of the employer's company*, or whose *terminations were removed in time from plaintiff's termination cannot be probative* of whether [the protected characteristic] was a determinative factor in the plaintiff's discharge."

*Carroll* v. *Sanderson Farms, Inc.*, Case No. H-10-3108, slip op. p. 17 (S.D. Tx. September 5, 2012 (available at 2012 WL 3866886) (emphasis added).

Johnson primarily relies on the allegations of another former GVN employee, Pamela Cortez. Cortez worked at GVN for approximately four years beginning in May of 2014 and ending in April of 2018 when she voluntarily terminated her employment. Cortez, who also sued

GVN, alleged "Race and National Origin Discrimination, Disparate Treatment and Hostile Work Environment and Sexual Harassment," "Violation of the FMLA," and "Disability Discrimination" pursuant to "Title I of the Americans with Disabilities Act," which were all dismissed by the Idaho District Court on February 14, 2020. *See*, Docket 4:18-cv-00495-BRW Document 32.[1] Cortez' testimony regarding what allegedly happened to her or other employees apart from Johnson is inadmissible. For example:

- Cortez is a half-hispanic, half-white, 51-year-old woman who is fluent in both English and Spanish, whereas Johnson was a white, 17-year-old female, who only spoke English.

- Cortez alleged that she was discriminated against under Title VII for race/gender discrimination; retaliated against; and discriminated under the Family Medical Leave Act and the Americans with Disabilities Act. Johnson only alleges that she was harassed in violation of Title VII.

- Cortez alleged that she was harassed by numerous GVN co-workers, Team Leaders and/or Supervisors, but none of them were the same people Johnson complains about; i.e., Johnson alleges that she was harassed by Andrew Barrera and Julio Barrientos.

- Cortez never alleged that *she* was called "pinche Gringa" and/or "pinche Americana," as Johnson does.

- Cortez made a litany of unsubstantiated allegations concerning harassment and discrimination of other employees, which had no relevance or bearing to *her* own claims. If allowed to testify in this matter, Cortez would open the proverbial flood-gates, which in turn would distract, confuse and overwhelm the jury.

---

[1] Cortez' case is currently on appeal before the Ninth Circuit.

- Cortez worked for GVN for approximately four years, from May of 2014 until April of 2018, and it is doubtful that Johnson ever worked with or for Cortez in the few days or weeks where they may have worked in the same area of GVN's plant.

## II. Johnson's Purported "Other Acts" Evidence Is Inadmissible Under Federal Rule 404 To Show That GVN Acted with Discriminatory or Retaliatory Intent Against Johnson.

Rule 404(b)(1), Federal Rules of Evidence, provides that evidence of "other acts" is not admissible to prove an entity's character, nor to show that on a particular occasion that an entity acted in accordance with that purported character. Fed.R.Evid. 404(b)(1). Johnson hopes to introduce so-called "me, too" evidence regarding other former, disgruntled employees to prove that GVN has a bias against white, female employees in order to support her claims. However, evidence regarding other witnesses' alleged mistreatment is irrelevant and should not be allowed. *See*, Fed.R.Evid. 402.

Further, within the Title VII context, evidence that an employer discriminated against other employees within Johnson's protected-class as a white woman is only admissible to prove discriminatory motive or intent, *if* it tends to prove that GVN discriminated against Johnson. Thus, the necessary elements of other acts testimony are: (1) testimony, (2) of other employees, (3) within Johnson's protected-class, (4) to show motive or intent, and (5) the evidence must tend to show that GVN discriminated against Johnson.

In *Goff* v. *Continental Oil Co.*, 678 F.2d 593 (5th Cir. 1982), the District Court properly excluded evidence of other employees who were allegedly discriminated against, with the Fifth Circuit explaining that:

> To prevail [plaintiff] had to show that [defendant] purposefully discriminated against him…All the witnesses could have testified to was their own individualized dealings with [defendant]…Because this testimony would not have

related to the issue of whether [plaintiff] suffered discrimination, the court did not
err in refusing to admit this testimony.

*Id.* at 596-97, overruled on other grounds, *Carter* v. *South Cent. Bell*, 912 F.2d 832 (5th Cir.

1990); see also *Haskell* v. *Kaman Corp.*, 743 F.2d 113, 121-22 (2d Cir. 1984 (reversible error to

allow the plaintiff to introduce evidence of alleged discrimination in discharges of other

company officers because such proof was "not relevant to the question of whether [plaintiff] was

terminated for [impermissible reasons]").

Evidence of Cortez' alleged discrimination and harassment and the alleged discrimination

and harassment of her co-workers does not tend to make it more likely that Johnson was

discriminated or retaliated against by GVN. Cortez and Johnson are not in the same protected

class: Johnson is a white female who only speaks English, whereas Cortez is a half-white, half-

Hispanic female who is fluent in English and Spanish. The same is true concerning may of the

other co-workers who were allegedly discriminated against: some of those individuals are

Hispanics, one is an African-American man, others (all unnamed and so unknown) were

allegedly "old" or "disabled."

Since Cortez' evidence is not illustrative of motive or intent by GVN, it is prohibited

propensity evidence under Rule 404(b), Federal Rules of Evidence.

### III.  Anecdotal Evidence of Other Employees Should be Excluded Under Federal Rule of Evidence 403, Because Introducing That Evidence Will Confuse the Issues, Mislead the Jury, Cause Undue Delay, and Create Substantial Risk of Unfair Prejudice to GVN.

Even assuming, *arguendo*, that the Court finds that the evidence of these other employees

is relevant, that does not end the inquiry. The evidence should still be excluded because of the

likelihood that it will confuse the jury, be a waste of time for the parties, the jury, and the Court,

and will also create a substantial risk of unfair prejudice to GVN.

As Rule 403 states,

> The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

As described above, evidence of other wrongs or acts, while generally inadmissible, may, under certain circumstances, be admissible to prove motive or intent. *See*, Fed.R.Evid. 404(b). However, even if evidence is found to be admissible to prove intent or motive, and is also found to be relevant, the evidence ***may still be excluded*** if it does not meet the test under Rule 403, Federal Rule of Evidence.

In *Hodge* v. *Mayer Unified Sch. Dist. No. 43 Governing Bd.*, No. 05-15577, 2007 WL 1112954 at *1 (9th Cir. 2007), the Ninth Circuit found that the District Court did not abuse its discretion where "it gave [the plaintiff] multiple opportunities to satisfy her burden of demonstrating the admissibility of other acts evidence…, and she utterly failed to do so." *Id.* The Ninth Circuit further found that the proposed evidence was also inadmissible under Rule 403 "due to risks of inefficiency and confusion stemming from the potential need to conduct mini-trials with regard to each alleged other act of discrimination." *Id.*

Because Johnson intends to introduce evidence of other employees' allegations (with questionable relevance), and because each witness must have some evidence of discrimination, or establish that their termination is sufficiently similar in all material respects to Johnson's, the trial will likely become unwieldly and will likely take much longer than the five days allotted by the Court.

Moreover: (1) the probative value of this evidence is substantially outweighed by the danger of unfair prejudice to GVN; (2) the value of the tangential evidence is also substantially

outweighed by danger of confusing the issues for the jury; (3) the probative value is substantially

outweighed by the danger that each additional witnesses' story will be misleading to the jury; (4)

the value of the evidence to Johnson's case—even if it was relevant—is substantially outweighed

by the certainty that such evidence will cause undue delay; and finally, (5) the value of the

evidence is substantially outweighed by the danger that it will result in a waste of time for the

jury, the parties, and the Court. Fed.R.Evid. 403.

There can be no doubt that calling former, disgruntled employees of GVN, to trudge

through the details of their respective complaints, will cause considerable delay and confusion.

And, the risk thereof to GVN is too great—and the prejudice is far too likely—to risk tainting the

jury with stories that, for any particular juror, may unfairly prejudice them against GVN for

reasons that have nothing to do with Johnson. Because the risk of substantial prejudice to GVN

greatly outweighs the minimal probative value, if any, to Johnson, the evidence should not be

admitted.

### IV.     Johnson Should Not Be Allowed to Call Any Witness That Was Not Properly Disclosed in Either Her Initial Disclosures or Discovery Responses.

"When a party fails to make the disclosures required by Rule 26(a), [Federal Rules of

Civil Procedure,] the party is not allowed to use those disclosures at trial unless it establishes that

the failure was substantially justified or is harmless." *Columbia Grain, Inc.* v. *Hinrichs Trading,*

*LLC*, 2015 WL 6675538 at *3 (D. Idaho 2015) (citing Fed.R.Civ.P. 37(c)(1)[2]; *Goodman* v.

*Staples*, 644 F.3d 817 (9th Cir. 2011). This "sanction is ***automatic and mandatory*** unless the

sanctioned party can show that its violation was either justified or harmless. *Id.* (citing *Yeti by*

---

[2] "If a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information or witness…at a trial."

*Molly, Ltd.* v. *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (emphasis added). The party that failed to make the disclosures "has the burden of showing justification or harmlessness." *Id.*

In her *Initial Disclosures*, Johnson identified the following witnesses who she alleged had personal knowledge regarding her claims: (1) her "family members," (2) Justin Ruiz, (3) Pamela Cortez, (4) Alma Rocha, (5) "Supervisor Andrew," and (6) "Line Supervisor Julio." *Plaintiff's Initial Disclosures* at p. 2-3 (Aug. 16, 2019). Johnson never supplemented these disclosures or her discovery responses to identify who the specific "family members" were. Similarly, Johnson never provided GVN with a summary of what these witnesses would testify about, even though GVN's discovery clearly requested such information, and Johnson was required to "supplement" her "disclosures throughout the discovery process and when more information and documents become available." For that reason alone, Johnson should not be allowed to call any "family members," Justin Ruiz, Pamela Cortez, "Supervisor Andrew" or "Line Supervisor Julio" as witnesses to testify at trial.

Alternatively, Johnson testified at her deposition that while working at GVN, she went home crying on many occasions and that her mother saw her crying.[3] Even assuming that that were true, Johnson's mother would not have any personal knowledge about the reasons that lead Johnson to cry, apart from what Johnson herself may have told her, which would constitute clear, inadmissible hearsay.

With respect to Justin Ruiz and Johnson's alleged "Supervisors," Andrew Barrera and Julio Barrientos, each of these individuals terminated their employment with GVN within several

---

[3] At that time, Johnson was living at home with her parents.

months of Johnson's voluntarily termination, and GVN has no information or knowledge as to

their current whereabouts, or what they might say if called as witnesses by Johnson. If Johnson

has been in contact with either Justin, Andrew or Julio, and has made arrangements for their

appearance at trial, that would be news to GVN and is certainly something that Johnson was

required to disclose to GVN, but did not. (Johnson has never supplemented her *Initial*

*Disclosures* or discovery responses.)

For these reasons, Johnson's "family members," Justin Ruiz, Pamela Cortez, "Supervisor

Andrew" and "Line Supervisor" Julio should not be allowed to testify at trial.

### V.    Johnson's Counselor Should Also Not Be Allowed to Testify at Trial.

Pursuant to Rule 26, Federal Rules of Civil Procedure, Johnson was required to disclose

all experts that she intended to call at this trial as part of her *Initial Disclosures*. Fed.R.Civ.P.

26(a)(2)(A).[4] Johnson's disclosures had to state "the subject matter on which the witness [was]

expected to present evidence under Federal Rules of Evidence 702, 703, or 705," as well as "a

summary of the ***facts and opinions*** to which the witness [was] expected to testify." Fed.R.Civ.P.

26(a)(2)(C)(i)-(ii) (emphasis added). Johnson was under an obligation to supplement this

information. *See* Fed.R.Civ.P. 26(a)(2)(E).[5]

Johnson's *Expert Witness Disclosures* merely said that she might

> call her treating providers at Creekside Counseling to testify regarding how the
> hostile work environment affected her mental health and self esteem. 550 W.
> Sunnyside Rd., Suite 1, Idaho Falls, ID 83402, 208-529-5777.

---

[4] "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

[5] "The parties must supplement these disclosures when required under Rule 26(e)."

*Plaintiff's Expert Witness Disclosures* (Jan. 24, 2020). As seen, Johnson omitted to provide a summary of the specific facts and opinions to which her counselor was expected to testify, and she failed to supplement her disclosures with this information. Fed.R.Civ.P. 26(a)(2)(C)(ii).[6]

Moreover, in its discovery requests to Johnson, GVN asked Johnson to:

> identify each person whom You have retained or specially employed to present evidence under Rules 702, 703, and 705 of the Federal Rules of Evidence in this matter, ***and for each such person,*** (a) provide a complete statement of all opinions to be expressed, and disclose the basis and reasons for the opinions; (b) describe all data or other information considered by the witness in forming opinions; (c) identify any exhibits to be used as a summary of or support for the opinions; (d) state all qualifications of the witness, including a list of all publications authored by the witness within the preceding ten (10) years; (e) state the compensation to be paid for the testimony; and (f) provide a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four (4) years.

*Defendant's First Set of Discovery Requests* at p. 6 (Jan. 17, 2020) (emphasis added), attached as Exhibit "B" to the *Declaration of David A Eisele* (Aug. 17, 2020) ("*Eisele Decl.*"). Johnson's response merely parroted her *Initial Disclosures*, saying that her "Fed. R. Civ. P. 26(a)(2)(C) Experts" included Johnson's "treating providers at Creekside Counseling to testify regarding how the [alleged] hostile work environment affected [Johnson's] mental health and self esteem."

*Plaintiff's Response to Defendant's First Set of Discovery Requests* at p. 3 (Mar. 11, 2020), attached as Exhibit "C" to the *Eisele Decl.* As can be seen, Johnson's discovery responses failed to include "a complete statement of all opinions to be expressed" by her counselor, and "the basis and reasons for [the counselor's] opinions." *Id.* In addition, Johnson's responses also failed to include:

---

[6] "Unless otherwise stipulated or ordered by the court, if the [expert] witness is not required to provide a written report," a party's expert witness disclosure "***must state***:
    …
    (ii) ***a summary of the facts and opinions to which the witness is expected to testify***." (Emphasis added.)

- the "data or other information considered by the [counselor] in forming [his/her] opinions;"

- "any exhibits to be used as a summary of or support for the [counselor's] opinions;"

- "all qualifications of the [counselor];"

- "the compensation to be paid for the [counselor's] testimony;" and

- "a listing of any other cases in which the [counselor] has testified as an expert at trial or by deposition…"

*Id.* Johnson never supplemented her discovery responses, and the deadline for doing so ended back in March. *Discovery Plan* at p. 5 (July 16, 2019).

Finally, GVN would be irreparably prejudiced if the Court were to allow Johnson to disclose this information at this late stage in the litigation, less than one month before trial.

### VI.   Johnson's Testimony Regarding Her Need to Seek Medical Attention for Depression Should Be Excluded, Because She Never Provided Any Medical Records from Creekside Counseling or Dr. Jensen, Her OB-GYN.

Johnson alleges that she "suffered emotional distress" as a "result of [GVN's] intentional acts alleged herein…" See, *Complaint and Demand for Jury Trial* at p. 7 (Mar. 27, 2019). In its initial discovery, GVN asked Johnson to produce "all Documents that Concern this litigation," as well as "all Documents that Concern the allegations in [her] *Complaint*." Johnson's discovery responses did ***not*** include ***any*** medical records, and, as previously noted, Johnson has never supplemented her discovery responses. As the Court undoubtedly knows, the discovery deadline is long-since passed. *Discovery Plan* at p. 5 (July 16, 2019) ("The deadline for the completion of fact" and "expert witness discovery is: March 20, 2020.")

At her deposition, Johnson testified that her OB-GYN, Dr. Pamela Jensen, prescribed her anti-depressants for depression that was allegedly caused by the harassment/discrimination she allegedly experienced at GVN, in support of her hostile work environment and/or constructive discharge claim. See, *Depo. of Alexis Johnson* at 98:12-15 (Dec. 2, 2019), attached as Exhibit "A" to the *Eisele Decl.* Moreover, Johnson never disclosed Dr. Jensen in either her *Initial Disclosures* or discovery responses as an expert witness. To the contrary, Johnson only disclosed economist Dr. Tyler Bowles, and an unidentified counselor that she saw only about three times at Creekside Counseling, in Idaho Falls.

VII.    **Inadmissible Testimony from Johnson's Declaration and Deposition.**

A.    **Johnson's Claim Regarding Her Unknown and Unidentifiable "Initial Trainer," Who Allegedly Instructed Her To Report Harassment Claims To GVN'S Quality Control Department, Is Inadmissible.**

In her *Declaration* (submitted in opposition to GVN's *Motion for Summary Judgment*), Johnson testified in pertinent part that:

> One of the first things that [Andrew] said to me was "I hear that bigger girls give the best blow jobs, can you verify that?" I told him that was inappropriate, and I immediately reported this to Quality Control (QC) Alma Roach [sic] *as I was told at the beginning of my employment that this was the chain of command for reporting problems. (My initial trainer told me that if my supervisor or team leader is involved in the harassment, and he was, that I should report this to a member of Quality Control or to another supervisor or team leader.)...*

*Declaration of Alexis Johnson* at p. 1-2, ¶4 (May 15, 2020) (emphasis added). Despite undisputed evidence that Johnson received, reviewed, understood and agreed to comply with GVN's policies and procedures in its Employee Handbook; and, despite the fact that the Employee Handbook explicitly and clearly instructs employees to report any harassment claims to either their "Supervisor" or "Human Resources"; and, despite Johnson's demonstrated understanding and compliance with that policy (e.g., Johnson says that she told her Supervisor,

Luis Chavez, that Julio sent her home early on two occasions and said: "White people can't do anything right"); Johnson testified at her deposition that she reported to Luis Chavez because she knew that he was her Supervisor and an appropriate person to report claims of perceived harassment to. Specifically, when asked how she knew Chavez "was someone to talk to," Johnson said: "Just because *I knew he was a supervisor*, that he was higher up, *and he was the one that managed most of everything during the shift*." *Deposition of Alexis Johnson* at 74:5-7 (Dec. 2, 2019) (emphasis added); *Eisele Decl.* at Exhibit "A."

Johnson's testimony about the phantom "initial trainer" who allegedly told her to report harassment/discrimination to Quality Control is inadmissible, because GVN has no possible way of knowing who this "trainer" even was or what position, title, or authority he or she had and, as such, the testimony: (1) lacks foundation; (2) is inadmissible hearsay; and (3) if allowed, would be grossly unfair and prejudicial to GVN.

### i.      Foundation.

In *Meeker* v. *Meeker*, 2004 WL 2457793 (N.D. Cal. 2004), the District Court for the Northern District of California sustained an objection for lack of foundation to a *Declaration* filed by the plaintiff, which consisted of "three unknown persons" alleged statements to the plaintiff, and "a few notes from" the plaintiff himself "about other unknown" persons. *Id.* at *7. In sustaining the objection, the Court held that "there [was] little foundation for the introduction of the alleged statements of unknown persons." *Id.* Like the statements of the unknown persons in *Meeker*, there is an insufficient foundation to introduce Johnson's trainer's alleged statements.

### ii.      Hearsay.

In *Meeker*, the District Court further held that the unknown parties' alleged statements constituted "inadmissible hearsay" because the plaintiff was introducing the statements "for the

purpose of proving the truth that each was confused by the" names of the plaintiff's and defendants' respective businesses. *Meeker*, 2004 WL 2457793 at *7 (N.D. Cal. 2004).

Here, the alleged statements of Johnson's trainer are also inadmissible hearsay and should be excluded, because Johnson has already attempted to offer the testimony to prove the "truth of the matter asserted," i.e., that Johnson was instructed/told to report alleged discrimination and harassment by her Supervisor or Team Leader to the Quality Control Department). Fed.R.Evid. 801(c)(i)-(ii).

### iii.    Rule 403, Federal Rules of Evidence; Prejudice; Confusion; Etc.

Finally, allowing Johnson to testify regarding her trainer's alleged statement would be unfairly prejudicial to GVN. See, Fed.R.Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of," among others, "unfair prejudice, confusing the issues," or "misleading the jury"). Johnson testified at her deposition that she does not know her trainer's name, and moreover, Johnson did not disclose this person (even by their title, since his/her name was unknown) in either her *Initial Disclosures* or her discovery responses as a potential witness or someone who had pertinent knowledge concerning this case. In fact, Johnson disclosed her "initial trainer's" alleged comment for the first time in May of this year, in opposition to GVN's *Motion for Summary Judgment*. By that time, the discovery deadline had elapsed. Prior thereto, Johnson had given no notice to GVN that her trainer had ever allegedly told her anything that might have some bearing to this case. See *Deposition of Alexis Johnson* at 42:11-14 (Dec. 2, 2019);[7] *Eisele Decl.* at Exhibit "A".

---

[7] "Q. And why did you choose Alma Roach [sic] to go to [to report Andrew's alleged comment]?"

A. Because she was the closest one to the situation.

Q. I'm sorry. The closest one?

Finally, it would be unfairly prejudicial to GVN to allow Johnson to testify about her trainer's supposed remark. Because Johnson did not disclose her trainer as a potential witness in her *Initial Disclosures* or discovery responses, GVN has no way to cross-examine that individual about their alleged statement, to help the jury to decide who is, and who is not, believable.

For each of these reasons, testimony concerning Johnson's trainer's alleged comment about reporting alleged harassment/discrimination to Quality Control should not be allowed.

### B. Testimony by Johnson and Cortez To the Effect That Despite Their Alleged Reports of Harassment/Discrimination to Various "Team Leaders and Supervisors," the Alleged Harassment "Continued the Entire Time [They Were] There" and "Was Never Corrected by Golden Valley Natural."

In her *Declaration*, Johnson testified that after she allegedly told Rocha about Andrew's alleged, inappropriate comment, Rocha:

> simply stated that Andrew does that to everyone, but did nothing to stop this behavior. ***This sexual harassment continued during the entire time I worked for Golden Valley Natural, LLC***,...

*Decl. of Alexis Johnson* (May 15, 2020) (emphasis added). Similar statements and testimony can be found in multiple locations throughout Johnson's *Declaration* and deposition, respectively, and are also repeated, nearly verbatim, in Cortez' deposition testimony and various *Declarations* of other former GVN employees that were filed in her (Cortez') case.

At her deposition, Johnson testified that she reported Andrew's alleged remark about "blow jobs" to Rocha. *Depo. of Alexis Johnson* at 41:23-25; *Eisele Decl.* at Exhibit "A." GVN's

---

A. She was a person that was right there—not right there, but she was somebody that was higher up that was the first person I found kind of situation."

As the Court can clearly see, there was no testimony by Johnson that she was ***told/instructed*** to report alleged harassment/discrimination to a member of Quality Control, like Alma Rocha. Instead, Johnson told Rocha because she happened to be the first person that Johnson found.

counsel specifically asked Johnson how she knew, or why she believed that, Andrew's alleged

sexual harassment "continued the entire time that she worked" at GVN. *Id.* at. 50:12-51:2; *see*

*Complaint and Demand for Jury Trial* at p. 3-4, ¶18 (Mar. 27, 2019).[8] Johnson testified that she

just ***assumed*** that that was the case, and that Andrew "***could have been***" engaging in other

harassment, ***because*** Rocha allegedly told her that Andrew "does that to everybody." *Depo. of*

*Alexis Johnson* at 51:5-23 (Dec. 2, 2019) (emphasis added); *Eisele Decl.* at Exhibit "A."

      Clearly, Johnson's testimony that Andrew's alleged "harassment" "continued the entire

time I was there," even after being reported to Rocha in Quality Control, is completely devoid of

any foundation: she has no personal knowledge that Andrew did, in fact, harass other employees,

both before and after the time that Andrew made the crude comment. Thus, Johnson's testimony

concerning this point is nothing more than speculation and conjecture, and should be excluded.

See, *Smith* v. *Pacific Bell Telephone Co., Inc.*, 662 F.Supp.2d 1199, 1217 (Dist. E.D. Cal. 2009);

see also, Fed.R.Evid. 602 ("A witness may testify to a matter only if evidence is introduced

sufficient to support a finding that the witness has personal knowledge of the matter…"). "[L]ay-

witnesses may not give testimony in the form of conclusions or that is speculative." *Redwind* v.

*Western Union, LLC*, 2016 WL 1732871, *2 (Dist. Or. 2016) (citing *Hund-Wesson Foods, Inc.* v.

*Ragu Foods, Inc.*, 627 F.2d 919, 928 (9th Cir. 1980)). Because Johnson's allegation concerning

Andrew's alleged harassment of other employees, and the continuation of the same after Johnson

allegedly reported Andrew's off-hand remark to Rocha, is conclusory and speculative, and

Johnson lacks any personal knowledge about the same. For these reasons, then, the Court should

---

[8] "This sexual harassment continued during the entire time [Johnson] worked for Golden Valley Natural, LLC, but despite [Johnson] reporting this behavior [(i.e., Andrew's alleged, inappropriate comment]), [GVN] refused to do anything about it.")

not allow Johnson to testify that Andrew's alleged harassment continued during the entire time of her employment.

## CONCLUSION

For the aforementioned reasons, the Court should prohibit the above-mentioned witnesses from testifying at trial and Johnson from testifying to the matters set forth herein.

DATED this 17th day of August, 2020.

WRIGHT LAW OFFICES, PLLC

By: _____
BRADLEY J WILLIAMS
Attorneys for Defendant Golden Valley
Natural, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am a licensed attorney in the State of Idaho, with my office in Idaho Falls, and that on the 17th day of August, 2020, I served a true and correct copy of the following described document on the person listed below by the method indicated below.

DOCUMENTATION SERVED: MEMORANDUM IN SUPPORT OF GOLDEN VALLEY NATURAL, LLC'S MOTION IN LIMINE

Jacob S. Wessel, Esq.
THOMSEN HOLMAN WHEILER PLLC
2635 Channing Way
Idaho Falls, Idaho 83404
Email: wessel@thwlaw.com
*Attorneys for Plaintiff Alexis Johnson*

☐ U.S. First Class Mail
☐ Overnight Mail
☐ Hand Delivery
☐ Facsimile (208-522-1277)
☐ E-mail
X E-file

_____
DAVID A EISELE