Erika P. Judd (ISB 8241)
William A. Fuhrman (ISB 2932)
Daniel E. Williams (ISB 3920)
JONES WILLIAMS FUHRMAN GOURLEY, P.A.
225 North 9th Street, Suite 820
Post Office Box 1097
Boise, Idaho 83701
Telephone:  208-331-1170
Facsimile:  208-331-1529
Email:  *ejudd@idalaw.com*
         *bfuhrman@idalaw.com*
         *dwilliams@idalaw.com*

Attorneys for Defendant Golden Valley Natural, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALEXIS JOHNSON,<br><br>Plaintiff,<br><br>vs.<br><br>GOLDEN VALLEY NATURAL, LLC,<br><br>Defendant. | Case No.  4:19-cv-00105-BLW<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF POST-TRIAL MOTIONS** |

Defendant Golden Valley Natural, LLC ("Golden Valley" or "Defendant"), by and through its substituted counsel of record, pursuant to Dist. Idaho Loc. Civ. R. 7.1, hereby provides its Brief in Support of Renewed Motion for Judgment as a Matter of Law and Alternative Motions for New Trial and Remittitur.

### INTRODUCTION

As the Court will remember, Defendant Golden Valley manufactures jerky and other meat products.  Defendant is a major employer in south-eastern Idaho, and enjoys a large diverse workforce with both significant numbers of Hispanic and female workers [Tr. 327-328].

Defendant is an equal opportunity employer [Tr. 327-328], and has instilled a strong corporate culture of non-discrimination [Tr. 337-338].

To that end, as evident during trial, Defendant has had in place official policies and practices against workplace discrimination ("zero" tolerance) [Tr. 243, 277, 280-281; Ex. Nos. 2000-2020]. Defendant's EEO policies are set forth in writing in a Handbook provided to every employee including Plaintiff, and are covered (both in English and Spanish) as part of its mandatory basic orientation training [Tr. 277-278; Ex. Nos. 2000 - 2020]. Defendant takes seriously its compliance with employment laws, and directs employees to raise workplace harassment issues with management, and if an issue remains unresolved, employees are given leave to "go up the ladder" and raise concerns with upper management – even to the level of the Chief Executive Officer [Tr. 286-287, 300-301].

This lawsuit involves allegations of wrongdoing against a part-time white female employee whom Defendant hired for work on its production lines. As set forth below, Defendant contends that it is entitled to post-trial relief from the Judgment [Dkt. 59] entered against it on October 8, 2020.

## I.      SUMMARY OF RELIEF REQUESTED

### RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Fed. R. Civ. P. 50(b), Defendant renews its motions for judgment as a matter of law under Fed. R. Civ. P. 50(a) made at the close of Plaintiff's case on the basis that Plaintiff failed to present legally sufficient evidence to prove (1) that Plaintiff was subject to adverse employment action, or that Defendant treated her differently than similarly situated employees because she was a white female; and (2) that Plaintiff was subject to a hostile work environment notwithstanding her failure to reasonably take advantage of preventive or corrective measures available within the workplace.

## MOTION FOR NEW TRIAL

Pursuant to Fed. R. Civ. P. 59(a), and in the alternative to Defendant's renewed motion for judgment as a matter of law, Defendant moves for a new trial on the grounds that (1) Plaintiff failed to utilize available *Faragher – Ellerth* corrective measures within the workplace; (2) Plaintiff violated the Court's Order precluding evidence of treatment by Creekside Counseling; (3) Plaintiff's verdict was premised upon surprise, leading to the introduction of improper hearsay evidence, and (4) an award of excessive damages.

## MOTION FOR REMITTITUR

In the alternative to the grant of a new trial, Defendant moves for an order conditioning the denial of the motion for new trial on a reduction of the Jury's damage award because the amount of the award was not supported by the evidence. In particular, Plaintiff did not demonstrate constructive discharge and the backpay award was excessive. Plaintiff's award for compensatory damages was excessive. Moreover, the award of punitive damages against Defendant was not supported by the evidence.

## II.     LAW AND ANALYSIS

## A.     RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Under Rule 50(b) of the Federal Rules of Civil Procedure, a court may grant a renewed motion for judgment as a matter of law if "the evidence permits only one reasonable conclusion, and that conclusion in contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quotation marks omitted). Applying this standard, the Court reviews the Jury's verdict to determine whether it is supported by substantial evidence. *Id.* "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). In

evaluating a motion for judgment as a matter of law, the Court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Experience Hendrix, LLC v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

> **1. Plaintiff did not present sufficient evidence of disparate treatment based upon gender discrimination.**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63, 106 S. Ct. 2399, 2404, 91 L. Ed. 2d 49 (1986) (quoting 42 U.S.C. § 2000e–2(a)(1)). A prima facie case of disparate treatment discrimination requires a showing by Plaintiff that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir. 2008) (citation omitted).

As discussed more fully below, Plaintiff's theory of disparate treatment was improperly conflated with Plaintiff's cause of action for hostile work environment because it relied almost exclusively upon the workplace environment as a whole, rather than tangible, discrete harm such as discharge. More particularly, Plaintiff failed to prove that she was subject to an adverse employment action or that similarly situated individuals outside of her class were treated more favorably.

> **i. Plaintiff did not present sufficient evidence of adverse employment action against Plaintiff *because* she was a white female.**

Plaintiff's evidence of disparate treatment consisted of a single comment about "white people" – not white women, not doing anything right. [Tr. 65]. Viewed in context, on two occasions Plaintiff was asked to go home, not *because* she was a white female, but because she

DEFENDANT'S BRIEF IN SUPPORT OF POST-TRIAL MOTIONS - 4

was not fulfilling her job responsibilities and was making mistakes in the performance of required job duties. [Tr. 66, 67, 127, 130, 131.]

On one occasion, Plaintiff reported that a lead on the cooked side, Julio, sent her home early after saying "white people" can't do anything right; on the other, she was sent home after Julio started to repack product into bags that Plaintiff had already packed. [*Id.*] Plaintiff reported both instances of being sent home to Julio's supervisor, Luis, but was "uncertain" if she reported the "white person" comment to Julio's supervisor. [Tr.131] She was, however, certain that on the times she reported to Julio's supervisor, Luis, that she did not report that Julio was calling her names. [Tr. 130]. Having not been advised that Plaintiff felt that she was sent home for discriminatory reasons, Luis sent Plaintiff home. At no time before filing of an EEOC claim did Plaintiff claim that she was wrongly discriminated against as a white female, or on any other basis [Tr. 244, 247, 451, 455].

Plaintiff was a part-time employee with no guarantee of full-time employment and was subject to being sent home before the end of her shift on an as-needed basis. [Tr. 47-49, 353-355]. Plaintiff was a full-time high school student, part-time college student, and part-time employee of Defendant. [Tr. 49-50, 68, 72]. Plaintiff testified that her schedule was approximately 30 hours per week, 4 pm to 10 pm, and that "[if we didn't have work and we got sent home early, then we got sent home early. We didn't have a choice on going home early or not." [Tr. 49, l. 24-p. 50, l. 1; see also Tr. 139]. Plaintiff readily acknowledged that she was sent home early on multiple occasions for legitimate business reasons. [Tr. 139].

An "adverse employment action" is an action that "'materially affects the compensation, terms, conditions, or privileges of employment." *Campbell*, 892 F.3d 1005, 1012 (9th Cir. 2018). Assigning an employee with "more, or more burdensome, work responsibilities…" than similarly situated employees is one example of an adverse employment action. *Davis*, 520 F.3d

at 1089. Additional examples include: "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Lambert* v. *Trump International Hotel and Tower*, 304 F.Supp.3d 405, 417 (2d Cir. 2018).

Plaintiff failed to prove that the loss of several hours of work amounted to an adverse employment action that *materially* affected the compensation, terms, conditions, or privileges of Plaintiff's employment. A loss of several hours, in the context of Plaintiff's employment as whole, does not give rise to a claim of adverse employment action and judgment as a matter of law should be entered upon this basis.

### ii. Plaintiff failed to produce proof that a similarly situated employee was treated more favorably.

In February 2018, Plaintiff voluntarily terminated her employment, but in doing so, did not indicate it was because of perceived discrimination [Tr. 455]. Despite evidence of co-worker disrespect, at no time was any employer adverse action taken against Plaintiff because of her race or gender. This fact is underscored by Plaintiff's failure to adduce evidence of any similarly situated employee who was treated otherwise. "Evidence that one or more similarly situated individuals outside of the protected class received more favorable treatment can constitute sufficient evidence of discrimination for a Title VII plaintiff to prevail." *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 883 (9th Cir. 2007) (citation omitted).

In support of her disparate treatment claim, Plaintiff relied upon a single, isolated instance of being replaced by another young female who was Hispanic. There was no evidence that this young woman was similarly situated in training or experience, only that she was also in high school and had started work at Golden Valley several days prior. [Tr. 65]. In addition, there was no evidence of a pattern of replacing Plaintiff with Hispanic women. *See e.g.*, *Beck*,

506 F.3d at 985. Instead, the record demonstrated a legitimate, non-discriminatory reason for sending Plaintiff home on two separate occasions – job performance. One isolated, stray comment referencing "white people," made in the context of job performance, is insufficient as a matter of law, to show intentional discrimination resulting in adverse employment.

### iii.    The jury instructions upon the disparate treatment claim were erroneous.

The Jury was incorrectly instructed as to the disparate treatment claim because the Jury was instructed that disparate treatment could be based upon race, sex, or gender. Special Verdict, Question No. 1. There was no evidence that Plaintiff suffered disparate treatment based upon *sex* or *gender*. At best, Plaintiff's sole evidence of disparate treatment arose out of a single comment "white people." As noted above, and viewed in context, this comment is grossly insufficient to support a claim for disparate treatment based upon race. Having been instructed that sex or gender may also form a basis for the claim, it is clear that the Jury was permitted to improperly conflate Plaintiff's claim for hostile work environment with her claim for disparate treatment – though the burden of proof and the elements to each claim must rise or fall upon its own merit.

### 2.    Plaintiff did not present sufficient evidence of hostile work environment based upon sexual harassment.

In order "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Meritor*, 477 U.S. at 67. (internal citation omitted). Similarly, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.* Johnson's Title VII sexual harassment claim is based entirely upon one inappropriate, sexually charged remark, allegedly made by an employee named "Andrew." Andrew's isolated statement is insufficient as a matter of law to

state a claim for "hostile environment" sexual harassment. *Brooks v. City of San Mateo,* 229 F.3d 917, 924 (9th Cir. 2000); *See also Faragher* v. *City of Boca Raton*, 524 U.S. 775, 787-788 (1998). Moreover, Plaintiff's reliance upon derogatory comments made to her in Spanish does not itself give rise to a claim for a hostile environment because such statements were not of such a nature that they interfered with Plaintiff's ability to perform her job.  Although not acceptable to Defendant, they represent mere name-calling.

         i.      **Plaintiff did not present sufficient evidence to show that she was subject to a hostile work environment despite available preventive or corrective measures within the workplace.**

To state a claim for a hostile work environment, a Plaintiff must prove that her working environment was both "subjectively and objectively perceived as hostile/abusive." *Brooks*, 229 F.3d at 923. An "objective" hostile/abusive environment is one that "a reasonable person" would find to be hostile or abusive. *Harris*, 510 U.S. at 21 (1993).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all [of] the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23.

Plaintiff stated a case for hostile work environment against Defendant under two theories: vicarious liability and negligence.  For each theory, the burden of proof differs.  "Which route leads to employer liability depends on the identity of the actual harasser, specifically whether he is a supervisor of the employee, or merely a co-worker." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). "If the harasser is a supervisor, the employer may be held vicariously liable." *Id.* (citations omitted). *Nichols v. Azteca Restaurant Enters.,* 256 F.3d 864, 875 (9th Cir.2001); *Ellison v. Brady,* 924 F.2d 872, 876 (9th Cir.1991)). "If, however, the harasser is merely a co-worker, the plaintiff must prove that the employer was negligent, *i.e.* that the

employer knew or should have known of the harassment but did not take adequate steps to address it." *Id.* (citing *Nichols,* 256 F.3d at 875).

### ii.    Plaintiff's evidence of a "hostile work environment" created by a *supervisor* was insufficient.

An employer is vicariously liable for workplace harassment where an "actionable hostile environment was created by one or more supervisors with immediate authority over the plaintiff." *Davis*, 520 F.3d at 1096.  Plaintiff failed to present evidence showing unlawful harassment or misconduct by any person in a *supervisory* position.

Plaintiff's assertion that "Andrew" was a supervisor was based upon her understanding that he was a "team lead." [Tr. 63].  Similarly, Julio, the individual credited with the "white girl" comment was a team lead, and not a supervisor.  Plaintiff specifically testified that she understood that the chain of command was "team lead," then "supervisor," with quality control in the middle. [Tr. 132].  There was no evidence that "team leads" had immediate supervisory authority over Plaintiff; nor was there evidence that any "supervisor" was responsible for any of the name-calling.    There was insufficient, if any, evidence to support the jury's verdict that Plaintiff was subjected to harassment or discrimination by a *supervisor*; or that she suffered adverse employment consequences as a result thereof.   Absent evidence of *supervisor* misconduct, Plaintiff's claim for vicarious liability must fail as a matter of law.

### iii.   Plaintiff did not suffer tangible employment action as a result of a racially or sexually hostile work environment.

Plaintiff claimed that she suffered tangible employment action because she was constructively discharged.  "[A]constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland v.*

*Chertoff*, 494 F.3d 1174, 1184–85 (9th Cir. 2007) (citing *Brooks*, 229 F.3d at 930 (internal quotation marks omitted)). "We set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Id.* (citation omitted); *see also Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494 (8th Cir.1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.")); *see also Landgraf v. USI Film Prods..,* 968 F .2d 427 (5th Cir.1992), *aff'd in part on other grounds,* 511 U.S. 244 (1994) ("[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove hostile working environment.").

Under the facts presented to the jury, Plaintiff was not, as a matter of law, constructively discharged. Plaintiff's evidence established that from the commencement of her work at Golden Valley in November, 2017 until she quit in February, 2018, she was subjected to daily name-calling. Plaintiff's evidence also established that she reported the name-calling a total of two times. [Tr. 61 (Jenny), Tr. 64 (Cortez)]. Plaintiff testified that she initially questioned the name-callers but then gave up after three weeks because she "just got used to it." [Tr. p. 187, ll. 4-5]. According to the testimony of Ms. Cortez, Plaintiff stated that she left because she was being sexually harassed, not because of name calling or discrimination. [Tr. 413]. Plaintiff's evidence was inconsistent, incomplete, and insufficient to establish that Plaintiff was constructively discharged.

Although evidence of incidents of co-worker misconduct were introduced (both men and *women* making derogatory comments in Spanish), the evidence was in the nature of mere offensive utterances, and there was no evidence that it unreasonably interfered with Plaintiff's

DEFENDANT'S BRIEF IN SUPPORT OF POST-TRIAL MOTIONS - 10

work performance [Tr. 247]. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993);

*Faragher*, 524 U.S. at 788 (Title VII is not a "general civility code."). Importantly, there was no

evidence of pervasive hostile or abusive conduct sinking to the level of physically threatening or

humiliating misconduct. *See Brooks*, 229 F.3d at 926 (a single "incident must be extremely

severe," not just "highly offensive"). The name-calling here involved 7-10 individuals, only

three of whom Plaintiff could identify by name, one of whom was a female. [Tr. p. 171]. The

single event suggestive of sexual overtones was isolated and limited in severity. C.f., *Broussard*

*v. Wells Bloomfield*, 2007 WL 1726571, at *3 (D. Nev. June 13, 2007) (Plaintiff's evidence

included multiple, repeated sexual threats and physical threats, in addition to name-calling).

      Simply stated, the evidence did not support a claim that Plaintiff's working conditions

were, *as a result of discrimination*, sufficiently extraordinary and egregious to overcome the

motivation of a competent, diligent, and reasonable employee to remain on the job to earn a

livelihood and to serve her employer. Plaintiff was a high-school student preparing to graduate,

working in a job where her work performance was repeatedly criticized. Plaintiff chose to quit

her job and failed to present evidence sufficient to support her claim for constructive discharge.

           **iv.**    **The Court erred in refusing to instruct the Jury upon the Faragher-Ellerth Defense.**

      Because Plaintiff was not subjected to a tangible employment action, Defendant was

entitled to an instruction to the jury upon the *Faragher-Ellerth* defense which provides:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any [ ] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise....

*Faragher,* 524 U.S. at 806, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257 (citation omitted) (the language in each case is identical).

At the close of Defendant requested a jury instruction in accordance with the proof and the elements set forth in *Faragher-Ellerth.*[1] Consistent with that defense, Defendant introduced evidence of its Handbook, which contains the Defendant employer's express policy against unlawful discrimination [Tr. 243; Ex. Nos. 2000-2020]. Defendant introduced evidence as to the distribution of the Handbook to every employee, and the fact that the Handbook and policies against discrimination are covered as part of Defendant's basic employee orientation training, both in English and Spanish [Tr. 277, 294, 297-299, 305-306, 314]. Further, Defendant introduced evidence as to the manner in which the policies against discrimination properly were applied [Tr. 447-448, 461-462]. Defendant readily satisfied the first prong of the *Faragher-Ellerth* defense. *See Hardage v. CBS Broad., Inc.,* 427 F.3d 1177, 1185 (9th Cir. 2005), *amended on denial of reh'g,* 433 F.3d 672 (9th Cir. 2006), *amended on denial of reh'g,* 436 F.3d 1050 (9th Cir. 2006) (holding that employer "fulfilled its duty to take preventive measures *as a matter of law* by adopting and promoting awareness of its anti-harassment policy.").

Plaintiff did not avail herself of the reporting procedures outlined in the Handbook. Plaintiff's evidence of reporting misconduct included (1) reporting the name-calling to "Jenny" two-weeks after she started her job; and, (2) reporting the name-calling, together with Andrew's comment to Ms. Cortez in or around early or mid-January [Tr. 64]. Plaintiff also reported Andrew's comment to Ms. Rocha in quality control. These efforts were minimal, did not comply with the Handbook, and failed to alert Defendant to any perceived discrimination by Plaintiff.

---

[1] *See also* Defendant's Motion for Summary Judgment [Dkt. 13]; Defendant's Trial Brief [Dkt. 37], pp. 10-12 (arguments set forth therein are hereby incorporated into this motion).

Plaintiff was provided with a clear path to corrective measures but failed, despite reasonable opportunity, to alert her supervisor of any perceived issues or discrimination. For these reasons, Defendant was entitled to an instruction on the *Faragher-Ellerth* defense to Plaintiff's hostile environment created by a supervisor claim.

> **v.     Plaintiff failed to sustain her burden of proof upon her claim for hostile work environment created by a co-worker.**

On her claim for negligence for a hostile work environment created by a non-immediate supervisor or coworker, it was Plaintiff's burden to prove that management knew or should have known of the harassment and "failed to take reasonably prompt, corrective action ..." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803–04 (9th Cir. 2001) (internal quotation omitted). "And, as the Second Circuit has explained, a plaintiff alleging co-worker harassment must prove that the employer 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.' " *Id.* (quoting *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995). "This formulation is substantively similar to the *Ellerth/Faragher* defense; the chief difference is that in the negligence context, the plaintiff bears the burden of proving the employer's failure to respond adequately to the harassment, while, in a vicarious liability regime, the defendant must establish the corrective action as an affirmative defense." *Id.*

Plaintiff did not allege or prove that Defendant provided no reasonable avenue for complaint. Instead, Plaintiff relied upon an argument that Defendant was generally aware of a hostile work environment during a several month period via the reporting of Ms. Cortez. The testimony of Ms. Cortez, however, established a litany of complaints related to other women, both white and Hispanic, most of which were sexual in nature. Mr. Zundel expressed appreciation and encouraged the reporting by Ms. Cortez and specifically called a meeting with a supervisor alleged to be involved with an incident involving a person other than the Plaintiff.

[Tr. 389]. The single sexual harassment complaint alleged with respect to Ms. Johnson, however, was not reported to Mr. Zundel or any other member of Golden Valley management.

As outlined above, Plaintiff's efforts at reporting misconduct were sporadic and misdirected. Plaintiff bore the burden of proving Golden Valley's failure to respond adequately to the harassment – Plaintiff did not avail herself of reasonably available reporting measures that would have allowed Golden Valley to redress her concerns. The reliance upon Ms. Cortez's testimony was insufficient to establish that Defendant was made aware of any discrimination or harassment directed at Plaintiff. For these reasons, Defendant renews its motion for judgment as a matter of law.

## B.   MOTION FOR NEW TRIAL OR REMITTITUR

Under Rule 59(a) of the Federal Rules of Civil Procedure, a court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation marks omitted). Unlike a determination under Rule 50, the Court is not required to view the evidence in the light most favorable to the non-moving party when considering a motion for new trial under Rule 59(a). *Experience Hendrix*, *supra*, 762 F.3d at 842. Instead, the Court "can weigh the evidence and assess the credibility of the witnesses." *Id.* (citation omitted). The Court does not presume that the verdict is correct; nor need it view the evidence in the light most favorable to the party in whose favor the verdict was rendered. *Landes*, 833 F.3d at 1371.

### 1.   Plaintiff failed to utilize corrective measures against harassment available within the workplace.

As briefed above, as tried to the Jury, Defendant has a comprehensive program against harassment and unlawful discrimination. [Tr. 243-244, 247, 277, 280-281, 451; Ex. Nos. 2000-

DEFENDANT'S BRIEF IN SUPPORT OF POST-TRIAL MOTIONS - 14

2020]. Plaintiff failed to take advantage of Defendant's program. This presented a classic case for a *Faragher – Ellerth* defense. The Jury may, or may not, have found in favor of Defendant on such basis, but being deprived of an opportunity to evaluate the defense, which was at the core of Defendant's substantive and damages case, constituted error supporting a new trial.

### 2.   Plaintiff violated the Court's Order in Limine precluding evidence of mental health counseling and treatment by Creekside Counseling.

Evidence of needed mental health counseling and treatment thereof self-evidently is evidence of potential high impact. Precisely because of that risk, before trial, Defendant filed its written Motions in Limine [Dkt. 24], seeking to preclude evidence of mental health counseling and treatment by Creekside Counseling (because Plaintiff never provided any mental health or counseling records to Defendant during discovery) [Dkt. 24-1, pp. 11-14]. The Court granted Defendant's Motion [Dkt. 44, p. 4].

However, notwithstanding the Court's clear Order, Plaintiff testified about her treatment at Creekside. [Tr. 70-71]. And, later, in closing, in discussing compensation, Plaintiff critically compounded the Court Order violation by driving home Plaintiff's alleged future need for counseling treatment. [Tr. 673]. The improper evidence undoubtedly influenced the Jury, which awarded Plaintiff $75,000 in non-economic damages (despite awarding only $7,740 in economic damages), as well as $150,000 in punitive damages. Because Plaintiff violated the Court's Order in Limine, Defendant is entitled to a new trial.

### 3.   Surprise, misconduct, and newly discovered evidence.

When the "flavor" of misconduct sufficiently permeates a proceeding so as to influence the Jury with passion and prejudice, the Court is warranted in granting a new trial. *Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000); *McKinley v. City of Eloy*, 705 F.2d 1110, 1117 (9th Cir.1983).

Prior to trial, Defendant objected to and moved in limine to exclude much of witness Cortez's anticipated testimony. *See* Motions in Limine [Dkt. 24]. However, at the last moment (day two of trial), after it became clear that Defendant was poised to introduce evidence showing collusion between witness Cortez and Plaintiff, suddenly witness Cortez was "unavailable" purportedly because her "grandmother in California had died," and Cortez needed to attend the funeral. Later that same afternoon, Plaintiff advised that witness Cortez's grandmother had not died, but rather she had to attend to another in-law in Ontario, Oregon that required her absence outside the District. It is uncertain as to whether these excuses were genuine, but the end result was that a critical witness was not available in person as promised, thereby eliminating Defendant's ability to cross-examine and impeach her in the presence of the jury, where the jury could observe her demeanor and weigh her credibility. In this case, for obvious reasons, the credibility of Ms. Cortez was critical to the outcome of the trial.

The entirety of the deposition testimony of Ms. Cortez was riddled with hearsay, hearsay upon hearsay, and was unfairly prejudicial, particularly in light of the inability of Defendant to conduct meaningful cross-examination of Ms. Cortez in the presence of the jury.

    4.    **The Jury's award of damages was excessive.**

The Jury awarded plaintiff $7,740 in back pay, but then went on to award $75,000 in non-economic damages, and another $150,000 in punitive damages. In reviewing a Jury's damages award, the Court may grant a motion for new trial if the award is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Snyder v. Freight Const.*, Local No. 287, 175 F.3d 680, 689 (9th Cir. 1999), *cert denied*, 528 US 926 (1999). Remittitur is available to correct excessive verdicts. *Pershing Park Vilas Homeowners Assoc. v. United Pac. Ins. Co.*, 219 F.3d 895, 905 (9th Cir. 2000). A trial court reviewing a damages award attacked as excessive must consider the evidence of damages in a

DEFENDANT'S BRIEF IN SUPPORT OF POST-TRIAL MOTIONS - 16

light most favorable to the prevailing party, *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987), *amended on other grounds by* 817 F.2d 609 (9th Cir. 1997).

If the court concludes that a damages award is excessive, it may either grant the Defendant's motion for a new trial, or deny the motion, conditioned upon the prevailing party's acceptance of a remittitur. *Silver Sage Partners v. City of Desert Hot Springs*, 251 F.3d 814, 818 (9th Cir. 2001). A trial court granting a motion for remittitur does not substitute its judgment for that of the Jury, but instead reduces the judgment to the maximum amount sustainable by the proof. *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1249 (9th Cir. 1982). Where the grounds for a new trial clearly appear, it is the "duty of the Court to interfere, to prevent the wrong." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 433 (1996).

Defendant moves for new trial on the basis that the Jury's award of damages was excessive. First, there is no record that Plaintiff submitted a single application for employment during the five-month interim period between her decision to quit working at Golden Valley and her choice to take employment at a higher rate of pay at Cabellas. Plaintiff testified only that she searched on a website, checked the newspaper and called around. Tr. p. 71, ll 13-14.

Plaintiff's employment with Golden Valley was scheduled for 30/hours per week and was subject to change depending on the availability of work. Plaintiff worked at Golden Valley for fewer than 3 months. Despite this, Plaintiff had her expert compute wages based upon a 40-hour workweek for five months during which time she was a full-time student preparing for graduation. Under the circumstances any award of back pay is contrary to the clear weight of the evidence. Such an award is also excessive. The jury's failure to make any deductions from Plaintiff's alleged damages is contrary to the clear weight of the evidence and excessive. There was no evidence that Plaintiff was able to sustain full-time employment before, during, or after

her employment with Golden Valley given her status as a high school student. Given this undisputed record, the economic damage award is excessive.

Similarly, the non-economic damage award of $75,000 is excessive and contrary to the clear weight of the evidence. Plaintiff testified that she had several counseling appointments and then ceased to seek or obtain counseling because she figured that she needed to help herself first.

> A. I -- I had gone there a few times. After a while, I didn't have a job anymore, so I couldn't pay the -- pay whatever to go see a counselor. And I had kind of figured out that this was something that I needed to find in myself, and I needed to help myself before anybody else can try to suggest or do anything for me. [Tr. 71]

Plaintiff produced no evidence of any long-term or lasting effect from the name calling. Instead, the evidence is undisputed that Plaintiff proceeded to graduate from high school, obtained greater employment in a higher paying job, and started a family. Plaintiff's closing statement as to counsel's perception that it's "apparent to me that she still needs counseling; that she is still dealing with this" raised the passions and prejudice of the jury and lacked any evidentiary support. [Tr. 672] Plaintiff's closing statement went so far as to suggest that the non-economic damages may include future counseling bills. [Tr. 673] As briefed above, Plaintiff did not disclose or produce evidence of ongoing treatment or any records to support the same. The jury thereafter returned a verdict of $75,000 for non-economic damages – an amount nearly 10 times greater than Plaintiff's economic damages. This verdict is excessive and is contrary to the clear weight of the evidence.

## 5.    The Jury's Award of Punitive Damages Was Not Supported by the Evidence.

Pursuant to 42 U.S.C § 1981a, a plaintiff may recover punitive damages upon demonstrating that the defendant engaged in a "discriminatory practice or discriminatory practices with *malice or with reckless indifference* to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1) (emphasis added). Thus, it is the intent of §

1981a "to authorize punitive awards in only a subset of cases involving intentional discrimination. Congress plainly sought to impose two standards of liability-one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999).

Aside from the fact that Plaintiff failed to produce evidence of malice or reckless indifference on behalf of any specified Golden Valley employee, "[t]he inquiry does not end with a showing of the requisite 'malice or ... reckless indifference' on the part of certain individuals." *Id.* at 539. Plaintiff would also need to "impute liability for punitive damages to [Golden Valley]." *Id. Kolstad* specifies that "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.' " *Id.* at 545.

Applying this standard, it is clear from Golden Valley's policies that any alleged discrimination was "contrary to [Golden Valley's] good-faith efforts to comply with Title VII." *Id.* Golden Valley took multiple steps in order to comply, in good faith, with Title VII: (1) it published and disseminated an antidiscrimination and harassment policy; and (2) it promptly sought to investigate unrelated claims of discrimination and/or harassment as reported by Ms. Cortez [Tr. 389]. That evidence is unrebutted. It is also unrebutted that Plaintiff did not follow the reporting procedures contained in the employee handbook for which she signed a receipt and acknowledgment. There was no evidence that Plaintiff complied with reasonably available reporting procedures to alert Golden Valley to harassment or discrimination of the Plaintiff. Instead, the record was riddled with conclusory statements, hearsay within hearsay, and unspecified allegations of discriminatory conduct by individuals lacking in any connection to Plaintiff. Ms. Cortez identified several instances involving different individuals and supervisors

DEFENDANT'S BRIEF IN SUPPORT OF POST-TRIAL MOTIONS - 19

who neither supervised nor had any relation to Plaintiff.  Ms. Cortez testified that Golden Valley management, Mr. Zundel, was appreciative of her reports and that he promptly made efforts to meet with a supervisor alleged to be involved in misconduct unrelated to Plaintiff.   Defendant made good faith efforts to comply with Title VII and Plaintiff's failure to comply with reasonable reporting procedures denied Defendant an opportunity to correct any perceived discrimination.  Simply stated, there was no evidence of malice or reckless indifference to support an award of punitive damages against Golden Valley.

## CONCLUSION

Based upon the foregoing, Defendant respectfully asks this Court to grant its motion for judgment as a matter of law; or, in the alternative, for a new trial and/or for an order conditioning the denial of the motion for new trial on a reduction of the Jury's damage award.

Dated this 5th day of November, 2020.

JONES WILLIAMS FUHRMAN GOURLEY, P.A

By: _____

Erika P. Judd, of the Firm

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of November, 2020, I submitted the foregoing to the Clerk of the Court for service on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing, including but not limited to, the following:

Jacob S. Wessel, Esq.                    *wessel@thwlaw.com, dixon@thwlaw.com*

Bradley J. Williams, Esq.                *brad@wrightlawidaho.com*

David A. Eisele, Esq.                    *dave@wrightlawidaho.com,*
                                         *brad@wrightlawidaho.com,*
                                         *dave.eisele@gmail.com*

Steven J. Wright, Esq.                   *steve@wrightlawidaho.com*

Alexis Johnson                           *alexisjo2700@gmail.com*


                                         */s/ Erika P. Judd*
                                         Erika P. Judd